UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:17-CR-336 |
| | § | |
| JUAN DE DIOS DE LA GARZA JR; aka | § | |
| JUANILLO; aka SIR DEMON | § | |

## <u>ORDER ON MOTION TO SUPPRESS</u>

Before the Court is Defendant Juan de Dios de la Garza's motion to suppress (D.E. 46). De la Garza is charged by superseding indictment (D.E. 34) with one count of possession of methamphetamine and one count of possession of a firearm by a felon. For the following reasons, the motion is **DENIED**.

### FACTS

In September 2013, law enforcement officers executed a search warrant at a residence in Corpus Christi, Texas. Inside, they found various illegal drugs and a firearm that had been reported stolen. De la Garza was present at the residence, along with three other adults and six children. Soon after he was arrested, De la Garza gave a videotaped interview indicating that he knew about the gun. He moves to suppress his statements during the interview.

### ANALYSIS

De la Garza makes two challenges under the Fifth Amendment. Neither succeeds.

First, he argues that his statements were obtained pursuant to an impermissible two-step interrogation as prohibited by *Missouri v. Seibert*, 542 U.S. 600 (2003). Before

beginning the interview, law enforcement showed De la Garza a form printed with a waiver of his *Miranda* rights and asked him to read it to them. De la Garza read the form aloud, until he reached the portion of the form that explains to the suspect possible crimes with which he could be charged. At that point, one of the officers conducting the interview interjected to explain that De la Garza was being held on suspicion of drug possession and possession of a stolen firearm. De la Garza asked, "Theft of a firearm?" The officer said that they had found a stolen gun, and De la Garza responded, "That's Yayo's . . . Javier Morin's . . . He's the owner." The officer asked, "He's the owner of the gun?" De la Garza agreed, and the officer explained, "Well it's been reported stolen." De la Garza started to say that he had worked with Morin, and that he knew there was something strange about him, until the officer cut him off to finish giving the *Miranda* warnings.

The officer's brief interjection during the administration of the *Miranda* warnings does not bring this case within the scope of *Seibert*, where the officer questioned an un-Mirandized suspect for 30 to 40 minutes, gave her a 20-minute break, then read the suspect *Miranda* warnings and asked her to repeat her confession. *See* 542 U.S. at 605. Instead, De la Garza "decided to blurt out an incriminating statement" before the officer finished reading his rights to him. *United States v. Wallace*, 753 F.3d 671, 674 (7th Cir. 2014). Nor did the officer's question—"He's the owner of the gun?"—"cross the line from asking clarifying or follow-up questions into the express questioning or its functional equivalent barred by *Miranda*." *Tolliver v. Sheets*, 594 F.3d 900, 920 (6th Cir. 2010) (citations and internal quotation marks omitted). The officer essentially restated

De la Garza's admission to him in the form of a question. *See id.* at 921 (officer who was in the course of administering *Miranda* warnings could ask a follow-up question after suspect volunteered information about "the other gun").

Second, De la Garza argues that law enforcement coerced his confession by threatening to arrest everyone present on the scene unless he gave a statement. This argument is unpersuasive. A similar fact pattern occurred in *United States v. Stewart*, 353 F. Supp. 2d 703 (E.D. La. 2004), where the questioning officers told a suspect that they had grounds to arrest his mother and girlfriend after drugs were found in their respective houses. In *Stewart*, the court surveyed cases standing for the proposition that "[a] confession motivated by desire to extricate a friend or relative from a possible good-faith arrest is not involuntary" and held that "Stewart's desire to extricate [his mother and girlfriend] from the consequences of a good faith arrest does not render his statements involuntary." *Id.* at 706–07 (citations and quotation marks omitted). After viewing the recording of the interview, the Court finds no basis to conclude that the officer conducting the interview acted in bad faith when he told De la Garza, in a calm, non-threatening manner, that the quantity of drugs recovered gave him grounds to arrest the other people present.[1]

---

[1] Despite the video recording of the interview, there is some possible ambiguity as to whether the questioning officer's statement—"How about the ice? Is it yours? There's enough [that] I can charge everybody in the house"—would have implied that he planned to arrest the school-age children on the scene, or whether it would have been apparent from context that the officer meant only that he had found a sufficient quantity of drugs to arrest all four adults and did not plan on arresting the children. Whatever the case, the record indicates that marijuana was found hidden in the children's bedroom, so the officer's statement does not appear to have been made in bad faith as might warrant suppression.

## **CONCLUSION**

For the foregoing reasons, De la Garza's motion is **DENIED**.

ORDERED this 12th day of July, 2018.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE